# Authority to Employ the Services of White House Office Employees During an Appropriations Lapse

The Antideficiency Act permits the White House Office to employ personnel during an appropriations lapse for functions that are excepted from the Act's general prohibition: functions relating to emergencies involving an imminent threat to the safety of human life or protection of property; other functions as to which express statutory authority to incur obligations in advance of appropriations has been granted; those functions for which such authority arises by necessary implication; and certain functions necessary to the discharge of the President's constitutional duties and powers. Such personnel may not be paid, however, until appropriations are enacted.

The President may use his authority under 3 U.S.C. § 105 to create and fill nonsalaried positions in the White House Office during an appropriations lapse, but nonsalaried employees cannot receive an obligation of payment for the services they perform in that capacity.

White House Office employees appointed under 3 U.S.C. § 105 may waive their compensation, and if they do so, their services may be accepted during an appropriations lapse.

September 13, 1995

MEMORANDUM OPINION FOR THE COUNSEL TO THE PRESIDENT

You have asked us to survey the authority available to the White House office to employ the services of White House employees during a lapse in appropriations. As you know, no salaries can be paid to any government employee, including those in the White House office, without an appropriation; so no White House employee could receive salary or other compensation payments during such a lapse. The Antideficiency Act further prevents federal officials from incurring financial obligations, such as the obligation to pay salaries, in advance of appropriations except as authorized by law. 31 U.S.C. § 1341. The Antideficiency Act and the organic statutes providing for the White House office and staff create three different authorizations under which certain White House employees may continue to work during a lapse in appropriations.

*1. Excepted Functions.* The Antideficiency Act permits the White House to employ personnel who perform functions that are excepted from the Antideficiency Act's general prohibition. The Act itself expressly excepts from its coverage functions relating to emergencies involving an imminent threat to the safety of human life or protection of property. It also acknowledges that there may be authorization provided by other law. We identified three categories of such authorizations in our August 16, 1995, memorandum for Office of Management and Budget Director Alice Rivlin: those functions as to which express statutory authority to incur obligations in advance of appropriations has been granted; those functions for which such authority arises by necessary implication; and certain functions necessary to the discharge of the President's constitutional duties and powers. Memorandum for Alice Rivlin, Director, Office of Management and

235

Budget, from Walter Dellinger, Assistant Attorney General, Office of Legal Counsel, *Re: Government Operations in the Event of a Lapse in Appropriations* (Aug. 16, 1995). These three categories are discussed more fully in the August memorandum as well as in a 1981 opinion by Attorney General Benjamin Civiletti. *Authority for the Continuance of Government Functions During a Temporary Lapse in Appropriations*, 43 Op. Att'y Gen. 293 (1981).

To reiterate, employees who perform excepted functions may not be paid until appropriations are enacted. Because, however, the Antideficiency Act permits incurring obligations in advance of appropriations and *"employ[ing]* personal services" 31 U.S.C. § 1342 for excepted functions, the appropriate White House administrative official may obligate the federal government to pay the salaries of employees who perform such functions in advance of the enactment of appropriations.

*2. Nonsalaried Positions.* The President has statutory authority to "appoint and fix the pay of . . . such number of . . . employees as he may determine to be appropriate." 3 U.S.C. § 105(a)(2)(D). It is our understanding that most White House office employees are appointed under this or a similarly formulated authority. *See, e.g.,* 3 U.S.C. § 107 (domestic policy staff). This office has consistently taken the position that the quoted portion of § 105 authorizes the President to create nonsalaried positions in the White House office. *See, e.g., The White House Office—Acceptance of Voluntary Service,* 2 Op. O.L.C. 322 (1978). We have also concluded that the Antideficiency Act's prohibition on acceptance of voluntary services "does not prohibit a person from serving without compensation in a position that is otherwise permitted by law to be nonsalaried." Id. at 322 (internal quotations omitted).

The President may use this authority to create and fill nonsalaried positions in the White House office during an appropriations lapse. By definition, the President does not incur an obligation on behalf of the federal government where he employs the services of persons in nonsalaried positions — there is no obligation to pay those who hold such positions. Then, § 1341 is not violated.

The President may appoint White House office employees who have been furloughed from their salaried positions to work in newly created, nonsalaried positions. This office has previously opined that White House employees may simultaneously occupy two different positions within the White House office, one salaried and one nonsalaried, as long as the two positions are compatible. The positions will typically be compatible as long as one is not subordinate to the other. *See* Memorandum for Arnold Intrater, General Counsel, Office of White House Administration, from John McGinnis, Deputy Assistant Attorney General, Office of Legal Counsel, *Re: Dual Office of Executive Secretary of National Security Council and Special Assistant* [to the President] (Mar. 1, 1988).

Unlike those employees who perform excepted functions, employees who occupy nonsalaried positions cannot receive an obligation for payment for the services they perform in that capacity. If, however, Congress enacts the form of "lookback" appropriation that it has in recent years — one that pays the salary of furloughed employees for the period when they were on furlough status — White House office employees who were furloughed from their salaried position during the period of appropriations lapse could be paid for the salaried position on the same basis as other furloughed employees even though they held a nonsalaried position during the period of lapse.

*3. Waiver of Salary.* As to positions for which compensation is fixed by law — that is, where a statute establishes either a fixed salary or a minimum salary for a position — the holder may not waive the salary in whole or in part. On the other hand, it is the position of the Comptroller General that compensation may be waived where the compensation is not fixed by law. Those positions on the White House office staff that are appointed pursuant to § 105 do not bear compensation that is fixed by law, as § 105 only sets forth maximum salaries.

Under the Comptroller General's approach, then, White House employees appointed under § 105 may waive their compensation. If they do so, their services may be accepted because doing so would not create any obligation to compensate them, let alone an obligation in advance of appropriations. By virtue of having waived any claim to compensation, however, it is highly unlikely that such White House employees would receive compensation even if a lookback appropriation is eventually enacted.

We have urged if the President decides to appoint employees to nonsalaried positions, "that papers relating to the appointment or employment of [such] persons . . . expressly provide that they will serve will serve without compensation." 2 Op. O.L.C. at 323. Similarly, any employee who voluntarily waives his or her salary or compensation should do so in writing.

WALTER DELLINGER
*Assistant Attorney General*
*Office of Legal Counsel*